**FILED**

2024 May-17  PM 01:50
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **JAMIE MILLS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **6:17-cv-00789-LSC** |
| | ) | |
| | ) | |
| **JEFFERSON S. DUNN,** | ) | |
| **Commissioner, Alabama** | ) | |
| **Department of Corrections,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OF OPINION AND ORDER

## I.    Introduction

On November 30, 2020, this Court dismissed this habeas petition filed by death row inmate Jamie Mills and closed this case. (Docs. 26 & 27.) Over three years later, on April 5, 2024, Mills filed a motion seeking relief from the judgment under Rules 60(b)(2), (b)(3), (b)(6), and (d) of the Federal Rules of Civil Procedure. (Doc. 42.) Mills raises a claim that he has raised unsuccessfully many times since his 2007 trial: that his common law wife, JoAnn Mills, who testified against him, and the District Attorney, Jack Bostick, hid the fact that JoAnn received a plea bargain for her testimony. However, Mills never offered any evidence in support of this claim. On January 29, 2024, following the exhaustion of all of Mills' appeals, the State of

Alabama moved the Alabama Supreme Court to authorize the Governor to set Mills' execution date. Less than one month later, Mills' longtime counsel, the Equal Justice Initiative, procured an affidavit from JoAnn's lawyer, dated February 26, 2024, in which he claims that JoAnn received a plea deal for her testimony prior to Mills' trial. Based on this affidavit, Mills now asks this Court for relief in a Rule 60 motion. Mills has also recently sought similar relief in the Alabama state courts, but he has been denied. Mills' execution is currently set for May 30, 2024. For the following reasons, the motion for relief from judgment (doc. 42) is due to be denied.

Additionally, this morning, Mills filed a Motion for Stay of Execution pending disposition of his Rule 60 motion. (Doc. 46.) Several hours later, Respondent filed a response in opposition. (Doc. 47.) As the Rule 60 motion is due to be denied, so will be the motion for stay of execution.

## II.    Background and Procedural History

This Court set out the facts of Mills' crime in its November 2020 opinion, taking them from the Alabama Court of Criminal Appeals' decision on direct appeal. (*See* Doc. 26.) In brief, on the afternoon of June 24, 2004, Mills and JoAnn went to the home of Floyd and Vera Hill in Guin, Alabama, intending to rob them. Floyd, 87, was Vera's caretaker, as she was in poor health. When Floyd took Mills out to his backyard shed to show him some items for an upcoming yard sale, Mills beat Floyd

to death. Vera and JoAnn came out to see about the commotion, and Mills hit Vera in the head with a ball-peen hammer. He also used a tire tool and a machete to beat the Hills while JoAnn stood by. Mills and JoAnn then stole several items from the Hills' home, including Vera's purse, a phone, and a locked tackle box containing Vera's prescription medications. Mills called Benjie Howe, a local drug user, and invited him over to purchase some of Vera's pain pills. Mills and JoAnn were apprehended the next day as they were pulling out of their driveway with the bloody murder weapons, stolen property, and a cement block in the trunk of their car. While Floyd died at the scene, Vera lingered until September 12, 2004, when she died due to complications from blunt head trauma.

Mills and JoAnn were each indicted for capital murder. Mills went to trial in the Circuit Court of Marion County on August 20, 2007. JoAnn was the State's final witness at Mills' trial, testifying on August 22. Her attorney, J. Tony Glenn, sat in the courtroom as she testified. At the beginning of her testimony, JoAnn stated that she had no agreement with the prosecution, as follows:

Q. Do you have an attorney?

A. Yes, sir.

Q. Is that attorney Tony Glenn?

A. Yes, sir.

Q. Is he here in the courtroom with you today?

A. Yes, sir.

Q. Has he discussed with you the implications of you coming and testifying before the jury? Has he talked to you about coming and testifying before the jury?

A. Yes.

Q. And are you doing this of your own free will?

A. Yes, sir.

Q. Have there been any deals or offers or anything like that made to you?

A. No, sir.

Q. And this is after a discussion with your attorney you chose to testify?

A. Yes, sir.

(Doc. 37-8 at R. 685-86.) JoAnn went on to offer graphic testimony of what Mills did

to the victims and what the two of them did thereafter to cover their tracks. Under

cross-examination, JoAnn insisted there was no deal for her testimony:

Q. And you're telling us today that your lawyer and you—you're a codefendant in this case, right?

A. Yes.

Q. Your lawyer and you have decided that it's a good idea for you to get up here and basically admit to capital murder where if you're convicted, the only two sentences are life without parole or death by lethal injection, and that you haven't made a deal with the DA?

A. No, sir.

Q. You're just up here admitting to capital murder without any hope of help from the district attorney's office?

A. No, sir.

Q. You do expect help from the district attorney's office?

A. No, sir.

Q. Has anybody told you that if you get up here and tell this story that the district attorney will have pity on you and let you plead to something besides murder?

A. No, sir.

Q. So you expect as a result of your testimony today to get either life without parole or death by lethal injection?

A. Yes.

[…]

Q. But you hope by doing this today to get off of life without parole or death by lethal injection, don't you, because you said a minute ago possibly. That's what you expect, don't you?

A. No.

Q. And your lawyer has suggested that you do this today, right?

A. He left it up to me.

Q. Okay. He let you decide whether or not to admit to being an accomplice to capital murder, where if convicted you only get life without parole or death by lethal injection? Your lawyer suggested that?

A. Yes.

Q. And you say that you don't expect some benefit from your testimony today?

A. Some forgiveness from God.

(*Id.* at R. 720-23.) At the conclusion of the day's testimony, once the jury had been dismissed, the defense raised the issue of JoAnn's testimony again:

MR. WILEY: Oh, there is one thing that we need to get on the record. We want to ask you—or ask Judge to direct him to assure us, him being Jack [Bostick], that there is no inducement for JoAnn's testimony.

MR. BOSTICK: There is not.

MR. WILEY: Not a promise, not a maybe, not a nudge, not a wink, because we think it stretches the bounds of credibility that her lawyer would let her testify as she did without such an inducement.

MR. BOSTICK: There is none.

MR. WILEY: None?

MR. BOSTICK: Have not made her any promises, nothing.

MR. WILEY: Have you suggested that a promise might be made after she testifies truthfully?

MR. BOSTICK: No.

MR. WILEY: No inducement whatsoever?

MR. BOSTICK: No.

MR. WILEY: Thank you, Your Honor.

(*Id.* at R. 829-30.) Glenn was present in court for JoAnn's testimony, and he said nothing to the trial court to indicate that she or the District Attorney had lied.

Mills was convicted of three counts of capital murder on August 23, 2007. At the conclusion of the penalty phase the following day, the jury recommended 11–1 that he receive a death sentence. The court then held a sentencing hearing on September 14 and sentenced Mills to death. On September 24, 2007—ten days after Mills' sentencing hearing—JoAnn was permitted to plead guilty to a single count of murder and was sentenced to life with the possibility of parole.

Mills filed a motion for new trial alleging that JoAnn perjured herself by declaring that her testimony was not given in an attempt to procure leniency for herself. The trial court denied the motion.

On direct appeal, Mills again argued that the prosecution illegally failed to disclose the plea deal that he contended must have occurred, violating Mills' rights under the Sixth, Eighth, and Fourteenth Amendments, as well as the Supreme Court's holding in *Banks v. Dretke*, 540 U.S. 668 (2004), that due process requires that evidence of bias and impeachment evidence must be revealed to the defense. The Alabama Court of Criminal Appeals affirmed the trial court's denial of the motion for new trial, noting that Mills did not offer any evidence that JoAnn had in

fact made any deal with the State. The Alabama Supreme Court denied certiorari on this claim.

Mills has been represented by the Equal Justice Initiative in his post-conviction proceedings, since December 2009. In both his 2011 post-conviction proceedings pursuant to Alabama Rule of Criminal Procedure 32 and before this Court in his federal habeas petition in 2017, Mills made similar claims. More specifically, he argued that his trial counsel were ineffective in litigating the motion for new trial because they failed to present evidence and that the State committed violations of *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *Napue v. Illinois*, 360 U.S. 264 (1959) in withholding evidence of the supposed plea deal. The Rule 32 court and this Court rejected these claims for the same reasons: Mills did not offer any evidence, other than speculation, that JoAnn lied about not having a plea deal. (*See* Memorandum of Opinion, Doc. 26 at 154-55, 200-203.) The Eleventh Circuit Court of Appeals declined to issue a certificate of appealability in his federal habeas case, and the Supreme Court denied certiorari on April 18, 2022. This concluded Mills' appeals.

For nearly two years, Mills made no attempt to bring his claims before any court or to further investigate his claims of perjury. On January 29, 2024, the State moved for Mills' execution to be set. His counsel moved for an enlargement of time

to answer that motion and were granted until March 7 to do so. On March 4, Mills filed a successive Rule 32 petition in the Marion County Circuit Court. For the first time, he offered the affidavit from JoAnn's attorney, Glenn, dated February 26, 2024. In relevant part, Glenn stated the following:

> 3.     During the summer of 2007, prior to Jamie Mills' trial, I had several discussions with Jack Bostick, who was the Marion County District Attorney at the time, about a plea offer based on Jo Ann's tragic mitigation history and her potential testimony at Jamie Mills' upcoming trial.

> 5.     Prior to testifying in Jamie Mills' case, Jo Ann and I met with Mr. Bostick and the victim's daughter. I presented Jo Ann's tragic mitigation history. Based on Jo Ann's terrible childhood, the victim's family agreed for Jo Ann to get a plea to life without parole if she testified truthfully at Jamie Mills' trial. Mr. Bostick agreed that if Jo Ann testified truthfully, he would not pursue the capital charge and would agree to a plea of murder.

> 6.     These meetings are recorded on my Attorney Fee Declaration Sheet.

(Doc. 42-1 at 2.) Glenn also stated that he did not speak with any attorney from the Equal Justice Initiative "regarding Jamie Mills' case or JoAnn's testimony in her husband's case" until February 23, 2024. (*Id.*) Glenn's fee declaration, dated September 25, 2007, is attached to the affidavit.

On March 7, Mills also answered the State's execution motion in the Alabama Supreme Court, arguing that the court should postpone setting his execution until after the Rule 32 court had considered his new claim.

On March 11, the State responded to both Mills' successive Rule 32 petition in the Marion County Circuit Court and to Mills' request that the Alabama Supreme Court postpone his execution. The State attached to both filings affidavits from District Attorney Bostick and Investigator Ted Smith denying the allegations in Glenn's affidavit. District Attorney Bostick stated, in relevant part:

> 3.      That prior to Jamie Ray Mills' trial I met with the family of Floyd and Vera Hill to discuss all the options and potential plea offers for both Jamie and JoAnne Mills. The family was adamant that we pursue the death penalty.
>
> 4.      That Tony Glenn believed it would be in his client's best interest to testify against Jamie Mills.
>
> 5.      That prior to Jamie Mills' trial Tony Glenn had JoAnne Mills brought to our office to speak to Ted Smith who was one of our investigators and who had known JoAnne Mills and her family for many years.
>
> 6.      That Ted Smith talked to JoAnne Mills about her testimony but did not offer her any sort of plea deal as the investigators knew that they were not allowed to negotiate any sort of deal.
>
> 7.      That I did not and could extend any sort of offer to JoAnne Mills prior to Jamie Mills' trial because the family had made their position very clear.
>
> 8.      That after the Jamie Mills trial I did sit down with the family of Floyd and Vera Hill and they felt that JoAnne Mills was sincere and remorseful in her testimony and they agreed at that point to offer her a life sentence. No offers were extended prior to her testimony.

(Doc. 44-1 at 2.)

Investigator Smith stated the following in relevant part:

I was employed for a period of 15 years as Investigator and Trial Coordinator in the District Attorney's Office for the 25th Judicial Circuit. During this time I was involved in the investigation of Jamie Mills and JoAnn Mills for the murder of Floyd and Vera Hill in Marion County, Alabama. I was well acquainted with defendant, JoAnne Mills and encouraged her to testify for the State in the case of Jamie Mills. At no time did I offer any plea deal to JoAnne Mills as any decision of that nature would have been made by the District Attorney or one of the Assistant District Attorney's, not an Investigator.

(Doc. 44-2 at 2.)

On March 20, 2024, the Alabama Supreme Court denied Mills' request to postpone his execution, and the Governor has scheduled Mills' execution for May 30, 2024. *Ex parte Mills*, No. 1080350 (Ala. Mar. 20, 2024); Doc. 42-3.

On April 5, 2024, Mills filed the instant Rule 60(b) motion for relief from the judgment in this case. (Doc. 42.) Respondent responded in opposition (doc. 44), and Mills filed a reply in support (doc. 45.)

On April 15, 2024, the Marion County Circuit Court dismissed Mills' second Rule 32 petition as successive precluded by Rule 32.2(b), reasoning that Mills cannot show that good cause exists for why the information presented in Glenn's affidavit was not known or could not have been ascertained through reasonable diligence. *Mills v. State of Alabama*, Order, Doc. 17, 49-CC-2004-000402.61 (Ala. Ct. Crim. App. April 16, 2024). The court stated: "Mr. Glenn represented JoAnn Mills before,

during and after Petitioner's trial and continues to practice law and maintain a law

office in Hamilton, Alabama. There is no evidence before the Court as to why the

Petitioner could not have secured the affidavit of Mr. Glenn prior to February 26,

2024." (*Id.*) The court also rejected Mills' contention that the affidavit is newly

discovered evidence pursuant to Ala. R. Crim. P. 32.1(e), reasoning:

> Petitioner raised the question of a plea deal with JoAnn Mills
> during his trial in 2007. Petitioner waited nearly 17 years to speak with
> the attorney for JoAnn Mills and offers no reason for the delay. District
> Attorney Jack Bostick denied the existence of a plea deal at trial and
> continues to do so today. Petitioner failed to exercise due diligence an
> ails to satisfy Rule 32.1(e)(1).

> The affidavit of Tony Glenn merely amounts to impeachment
> evidence. Petitioner offers the affidavit as potential impeachment
> evidence in this petition claiming JoAnn Mills and District Attorney
> Jack Bostick were untruthful about the existence of a plea agreement.
> Tony Glenn's affidavit or testimony would have served the same
> purpose seventeen (17) years ago at trial. Petitioner fails to satisfy Rule
> 32.1(e)(2).

> Petitioner surmises that had attorney Tony Glenn's statements
> of a plea deal been known at trial, the result probably would have been
> different. Petitioner's assertion is nothing more than mere speculation.
> There was ample testimony from which the jury could conclude
> Petitioner murdered Floyd and Vera Hill. In particular, in its
> Sentencing Order the Trial Court noted the murder weapon and bloody
> clothing were found in the Petitioner's car. Petitioner fails to satisfying
> the requirements of Rule 32.1(e)(4).

> Lastly, to prevail under Rule 32.1(e)(5), the facts must establish
> that the petitioner is innocent of the crime for which he was convicted
> or should not have received the sentence given. Petitioner has
> presented no evidence that would establish he is innocent of murder.

> The affidavit of Tony Glenn does not establish or prove the existence of a plea deal prior to the testimony of JoAnn Mills. The existence of a plea deal has been vigorously refuted by the State for nearly seventeen (17) years. Petitioner fails to satisfy the requirements of Rule 32.1(e)(5).

(*Id.*)

## III.   Rule 60(b) and (d) Standards

Rule 60(b) sets forth grounds by which a party may be relieved from a final judgment or other order. Relevant here, Rule 60(b)(2) provides that a party may be entitled to relief based upon "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Additionally, Rule 60(b)(3) provides that a party may be entitled to relief based upon "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Relatedly, Rule 60(d) states that Rule 60 does not limit a court's power to grant relief in various respects, including "for fraud on the court." Finally, Rule 60(b)(6) is a catchall provision "any other reason that justifies relief."

## IV.   Discussion

### A.   Rule 60(b)(2) – newly discovered evidence

Mills contends that relief is warranted here under Rule 60(b)(2) because he exercised due diligence in discovering his new evidence—the February 2024 affidavit—because the new evidence is material and neither cumulative nor merely

impeachment evidence, and because there is a reasonable probability of a different result had evidence that JoAnn had a pretrial agreement with the prosecution been presented at trial. The Court disagrees.

First, this claim is untimely. A Rule 60(b)(2) motion must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). This Court denied habeas relief on November 30, 2020, making Mills' April 5, 2024, Rule 60(b)(2) claim untimely.

Even if it were timely filed, Mills cannot satisfy the requirements of Rule 60(b)(2). "A motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met." *Scutieri v. Paige*, 808 F.2d 785, 793 (11th Cir. 1987). The Eleventh Circuit has explained that the movant must show the following:

> (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.

*Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000).

Mills cannot make this showing. First, Mills did not exercise reasonable diligence in discovering his new evidence. Mills knew no later than August 22, 2007, that Glenn represented JoAnn. The record is clear that Glenn sat in the courtroom

during JoAnn's testimony as her counsel. Glenn filed his attorney fee declaration the day after JoAnn entered her guilty plea to murder, and Mills could have acquired it at some point between 2007 and 2020, let alone 2024. Mills offers no reason why he could not have spoken with Glenn or obtained Glenn's September 2007 fee declaration before February 2024, nor does he plead that Glenn refused to speak with him at an earlier date. Mills has been claiming since his motion for new trial in October 2007 that JoAnn perjured herself because she received a plea deal in exchange for her testimony. The State unequivocally denies—and has denied since 2007—that any such deal existed. JoAnn testified under oath that there was no deal, and District Attorney Bostick likewise informed the trial court that there was no deal. And now, both District Attorney Bostick and Investigator Smith again deny the existence of a pretrial deal with JoAnn in their affidavits. Mills has produced no documentary evidence of a plea deal prior to Mills' trial. He has merely produced Glenn's affidavit, in which he makes vague references to entries in his fee declaration. The fee declaration has errors, as discussed further herein. There is certainly no note from Glenn's files documenting the terms of this alleged plea deal for JoAnn's testimony or anything signed by JoAnn or by the prosecution prior to JoAnn's testimony.

Additionally, Glenn's affidavit is mere impeachment evidence and would not have changed the result of Mills' trial. The affidavit is Glenn claiming that JoAnn and District Attorney Bostick were untruthful because a plea agreement existed. Had Mills presented this evidence at trial, it would have served as impeachment evidence. Further, even if Glenn were correct and JoAnn had perjured herself as to the existence of a pretrial plea agreement, that would not constitute evidence that she lied as to the rest of her testimony. Additionally, JoAnn's testimony was but one part of the overwhelming evidence against Mills, including a second witness linking his vehicle to the crime scene, as well as the fact that a pair of his work pants (with his name on the inside tab) stained with the victims' blood, murder weapons containing the victims' DNA, and a concrete block were found in his trunk. In sum, even if JoAnn's testimony been excluded at Mills' trial, there was sufficient evidence to convict him for the murders.

For these reasons, Mills' Rule 60(b)(2) claim is untimely and meritless.

**B.      Rule 60(b)(3) and (d) – fraud**

Mills also claims that relief is warranted here under Rule 60(b)(3) and Rule 60(d) because District Attorney Bostick lied under oath about the existence of a pretrial plea deal with JoAnn, and the State did not correct his allegedly false statements. Meanwhile, the State maintains that District Attorney Bostick's

testimony was truthful and that there has been no fraud perpetrated upon the Court. Mills is due no relief under these provisions.

At the outset, to the extent that Mills brings this as a Rule 60(b)(3) claim, it is untimely. A Rule 60(b)(3) motion must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). As explained above, this Court denied habeas relief on November 30, 2020, making Mills' April 5, 2024, Rule 60(b)(3) claim untimely. Even if the "reasonable time" standard in Rule 60(c)(1) were used, Mills has failed to offer this Court any reason why he could not have talked with Glenn and brought his Rule 60 motion before now, more than three years following this Court's memorandum of opinion and order dismissing this habeas case.

Even if it were timely filed, Mills cannot establish that he is entitled to relief under Rule 60(b)(3), which requires him to "prove[] by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct," and "show that the conduct prevented the losing party from fully and fairly presenting his case or defense." *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007) (quoting *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000)). The only "evidence" that Mills has offered of fraud by the State is Glenn's February 2024 affidavit, which

references his September 2007 attorney fee declaration. As an initial matter, the fee declaration is problematic because the dating of some of the relevant events is misstated. Glenn's fee declaration lists the following items of potential support for his affidavit that he struck a pretrial plea deal with the State for JoAnn:

07/17/07 Meeting with DA re defendant & proposed plea offer 1.00

07/23/07 Meeting with Defendant re proposed plea offer 0.60

08/01/07 Discussions with DA re testimony of defendant @ trial 0.50

08/22/07 Discussions with DA re trial of co-defendant 0.30

08/24/07 Meetings with Defendant @ Jail – re testimony 2.00

08/27/07 Research re proposed plea & ramifications of testimony 3.20

08/29/07 Continued discussions with DA re defendant & plea 0.50

09/03/07 Meeting with Defendant re plea & testimony 0.50

09/04/07 Meeting with Defendant @ Jail – prep for testimony 3.00

09/05/07 Meeting with DA re defendant & plea offer 0.40

09/06/07 Meeting with Defendant @ Jail re plea offered 4.00

09/10/07 Meeting with Defendant @ Jail re testimony 1.60

09/11/07 Attendance @ trial of co-defendant for testimony of client 4.00

09/12/07 Attendance @ trial during testimony of client 2.00

09/13/07 Meeting with Defendant @ Jail re jury verdict 1.00

09/18/07 Discussions with DA re entry of plea for defendant 0.40

09/19/07 Meeting with Defendant @ Jail re plea offered 1.50

09/21/07 Meeting with Defendant @ Jail re entry of plea 2.00

09/24/07 Attendance @ plea agreement hearing 0.50

09/24/07 Discussing with Defendant ramifications of plea 0.40

09/24/07 Discussions with DA re acceptance of plea 0.20

09/24/07 Representation of Defendant @ presentation of plea 2.00

(Doc. 42-1 at 2.) However, it is undisputed that JoAnn testified at Mills' trial on August 22, 2007, that the penalty phase of Mills' trial concluded on August 23, and that JoAnn entered her plea on September 24, 2007. Thus, Glenn's claim in his fee declaration that he attended Mills' trial to watch JoAnn testify for four hours on September 11, 2007, and for another two hours on September 12 is inaccurate. Given these inaccuracies, the accuracy of Glenn's other entries, dated in September after Mills' trial, which reference prepping JoAnn for her testimony, like the one on September 4, 2007, is also called into question. Mills claims that these are mere "scrivener's errors," but the fact remains that Mills would have the Court find that District Attorney Bostick perjured himself and the State lied to this Court based upon the statements in this fee declaration that contain errors.

More importantly, as seen above, Glenn's fee declaration makes reference to a "meeting with DA re defendant [JoAnn] & proposed plea offer" on July 17 and a "meeting with Defendant re proposed plea offer" on July 23, 2007, which would have occurred prior to JoAnn's testimony at Mills' trial. (Doc. 42-1 at 2.) However, Glenn's fee declaration nowhere states explicitly that District Attorney Bostick proposed this plea offer or that the discussions were actually fruitful for Glenn and JoAnn. Meanwhile, District Attorney Bostick states in his affidavit that Glenn "believed it would be in his client's best interest to testify against Jamie Mills." (Doc. 44-1 at 2.) He further states that while Glenn brought JoAnn to the District Attorney's Office to speak with Investigator Smith, Investigator Smith did not offer her a plea deal—nor could he, as such was the district attorney's purview. (*Id.*) District Attorney Bostick insists that he did not offer JoAnn a deal prior to Mills' trial because the victims' family "was adamant that we pursue the death penalty" as to both Mills and JoAnn. (*Id.*) However, after Mills' trial, District Attorney Bostick sat down with the family, who felt that JoAnn had been "sincere and remorseful in her testimony." (*Id.*) At that point, they agreed that she could be offered a plea bargain for a life sentence. (*Id.*) Considering that timeline, Glenn's time entries indicating that he had discussions with JoAnn of a plea deal after August 23, 2007— such as the entries dated August 27 and 29, and September 3 and 5, support District

Attorney Bostick's recollection of events. Finally, the Court must note that if Glenn's affidavit is to be believed, then Glenn sat in court on August 22, 2007, and watched both JoAnn and District Attorney Bostick repeatedly perjure themselves, yet said nothing to the Court. In sum, Glenn's affidavit and fee declaration is simply not clear and convincing evidence of proof of a *Brady* violation or outright fraud upon this Court. Therefore, his Rule 60(b)(3) claim is untimely and meritless.

### C.      Rule 60(b)(6) – catchall

Finally, Mills is not due relief under this catchall provision. First, this claim is untimely. Rule 60(c)(1) provides that claims brought pursuant to Rule 60(b)(6) "must be made within a reasonable time." "What constitutes a 'reasonable time' depends upon the circumstances of each case, including 'whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner.'" *Gill v. Wells*, 610 F. App'x 809, 812 (11th Cir. 2015) (quoting *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1275 (11th Cir. 2008)). While there is no explicit time limit for filing Rule 60(b)(6) motions, as opposed to Rule 60(b)(1), (b)(2), or (b)(3) motions, the delay before filing must be reasonable. Mills claims that his three-plus-year delay is reasonable because Glenn's "willingness to come forward this year allowed Mr. Mills to discover the evidence contained in [] Glenn's affidavit just one-month prior, on February 23, 2024." But

as Glenn stated in his affidavit, Mills' counsel never spoke to him about Mills' case or JoAnn's testimony until February 23, 2024, nearly a month after the State moved for Mills' execution to be set. The State also has an interest in seeing that Mills' execution is carried out, and for Mills to wait until after the State has set his execution to attempt to reopen his habeas litigation based upon information he could have produced years ago is prejudicial to the State's interests.

Even if it were timely filed, Mills cannot show that he is due relief under the catchall provision of Rule 60(b). A "movant seeking relief under Rule 60(b)(6) [has] to show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). The Supreme Court has stated that "[s]uch circumstances will rarely occur in the habeas context." *Id.* For the reasons stated above, Mills cannot make this showing.

## V.    Conclusion

For the foregoing reasons, Mills' Rule 60 motion (doc. 42) is **DENIED**. Additionally, the motion for stay of execution pending this Court's resolution of the Rule 60 motion (doc. 46) is also hereby **DENIED**.

**DONE** and **ORDERED** on May 17, 2024.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704